1   LAW OFFICES OF THOMAS W. FALVEY
    THOMAS W. FALVEY, SBN 65744
2   MICHAEL H. BOYAMIAN, SBN 256107
    550 No. Brand Blvd., Suite 1500
3   Glendale, California 91203
    Telephone: (818) 547-5200
4   Facsimile: (818) 500-9307
    E-mail: thomaswfalvey@gmail.com
5
    SUNDEEN SALINAS & PYLE
6   HUNTER PYLE, SBN 191125
    MANA BARARI, SBN 275328
7   428 13th Street, 8th Floor
    Oakland, California 94612
8   Telephone: (510) 663-9240
    Facsimile: (510) 663-9241
9   E-mail: hpyle@ssrplaw.com

10  Attorneys for Plaintiff MARITZA STOVALL-GUSMAN,
    on behalf of herself, all others similarly situated, and the
11  general public

12

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15

16  MARITZA STOVALL-GUSMAN,            Case No. 3:13-cv-02540-JD

17              Plaintiff,             DECLARATION OF HUNTER PYLE IN
                                       SUPPORT OF PLAINTIFF'S MOTION FOR
18        v.                           PRELIMINARY APPROVAL OF CLASS
                                       ACTION SETTLEMENT
19  W.W. GRAINGER,
                                       Date:     September 24, 2014
20              Defendant.             Time:     9:30 a.m.
                                       Ctrm:     11
21                                     Before:   Hon. James Donato

22
                                       Complaint Filed: March 22, 2013
23                                     Trial Date: None Set

24

25

26

27

28                                    - 1 -
    DECLARATION OF HUNTER PYLE ISO PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
                              CLASS ACTION SETTLEMENT
                          Case No. 3:13-cv-02540-JD

1    I, Hunter Pyle, declare as follows:

2        1.      I am a member in good standing of the Bar of the State of California and a partner at

3    the law firm of Sundeen Salinas & Pyle ("SSP"), in Oakland, California. I am counsel of record

4    for plaintiff Maritza Stovall-Gusman ("Plaintiff") in this lawsuit ("Action"), along with my co-

5    counsel the Law Office of Thomas W. Falvey. I have personal knowledge of the facts set forth in

6    this declaration and could and would testify competently to them.

7                        **MY BACKGROUND AND EXPERIENCE**

8        2.      In 1997, I received a J.D. degree from Boalt Hall School of Law at the University of

9    California at Berkeley. While in law school, I was one of the leaders of the Boalt Hall mock trial

10   team that competed at the regional NITA mock trial competition. I also served as a Director of the

11   Boalt Hall Workers Rights Clinic. As a law student, I clerked for Professor David Feller, one of

12   the premier scholars in the field of labor and employment law. I also worked as a law clerk at

13   Eggleston, Siegel & Lewitter; Beeson, Tayer & Bodine; and Davis, Cowell & Bowe. Each of these

14   firms represents employees in the labor and employment context.

15       3.      I have been practicing law since December 1997. From December 1997 through

16   October 2003, I was an associate at Siegel & Yee, in Oakland, where I focused my practice mainly

17   on employment law. In that capacity, I was the primary attorney for numerous employment law

18   cases that resolved prior to trial, handling all aspects of these cases. Additionally, I served as

19   second chair in approximately ten trials.

20       4.      In October 2003, I left Siegel & Yee and became a partner at Sundeen Salinas &

21   Pyle. Since that time, most of my cases have involved employment law, and many of them have

22   involved wage and hour matters. Over the past ten years, I have tried approximately fifteen cases

23   to verdict.

24       5.      I have previously been approved as Class Counsel in the following cases, among

25   others, that resolved favorably for the class members: *Jackson v. ACE* (Alameda County Superior

26   Court case no. RG05241698; settled for $1.1 million); *Beasley, et al., v. Allied Cash Advance*

27   (Alameda County Superior Court case no. 07359698; settled for $400,000); *Schakow v. Lerner*

28                                                  - 2 -

1   *New York, Inc., et al.* (Contra Costa County case no. MSC08-01145; settled for $850,000); *Brown,*

2   *et al. v. George S. May International Company* (Alameda County Superior Court case no.

3   08413991; settled for $750,000); *Miriam Aquino Ruelas, et al. v. Neilmed Products, Inc.* (Sonoma

4   County Case No. SCV245231; settled for approximately $600,000); *Randolph et al. v. AT&T*

5   *Wireless Services, Inc., et al.* (Alameda County Superior Court case no. RG05193855; settled for

6   approximately $70 million); and *Booker II, et al. v. Auto Guardian, et al.* (Alameda Superior Court

7   case No. RG11562117; settled for $775,000). Each of these cases except for the *Randolph* case

8   was a wage and hour class action. (*Randolph* was a consumer class action.)

9       6.      I am counsel of record in several other pending class actions, including *Alonzo et al.*

10  *v. First Transit, Inc.* (Los Angeles County Superior Court Case No. BC433932); *Kostyuk v. Golden*

11  *State Overnight Delivery Service, Inc.* (Alameda County Superior Court Case No. RG 14727191);

12  and *Rybakov et al. v. Bissell Bros., Inc.* (Sacramento County Superior Court Case No. 34-2011-

13  00110803).

14      7.      I am a member of the California State Bar Labor and Employment Law Section.  In

15  addition, I regularly serve as a volunteer attorney at the Workers' Rights Clinic put on by the Legal

16  Aid Society of San Francisco Employment Law Center.  I am also a member or past member of the

17  Alameda County Bar Association Labor and Employment Section and Trial Practice Section.  My

18  experience in the prosecution and resolution of employment and wage and hour litigation in

19  California was a significant factor in this case proceeding to settlement.

20                              **INTRODUCTION**

21      8.      This is a wage and hour class action brought by Plaintiff against defendant W.W.

22  Grainger ("Defendant").

23      9.      This motion seeks preliminary approval of a settlement reached in this case.  The

24  terms of the settlement are contained in the Joint Stipulation of Class Action Settlement and

25  Release ("Settlement" or "Settlement Agreement"), attached hereto as <u>Exhibit 1</u>.  The parties

26  reached this Settlement through arms-length bargaining, after sufficient investigation and discovery

27  and extensive settlement discussions.

28

- 3 -

**DECLARATION OF HUNTER PYLE ISO PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
Case No. 3:13-cv-02540-JD**

1

10.     Under the Settlement Agreement, Defendant will pay seven hundred fifteen

2

thousand dollars and zero cents ($715,000.00) ("Gross Settlement Amount") to settle the Action,

3

which shall include attorneys' fees and costs, the Class Representative Enhancement, the payment

4

to the Labor and Workforce Development Agency ("LWDA"), and court-approved costs of

5

settlement administration.  Defendant has also agreed to reimburse Plaintiff for half the costs of

6

mediation, totaling $9,250.00.

7

**DEFINITIONS**

8

11.     The capitalized terms used herein are defined in the Settlement Agreement attached

9

hereto as <u>Exhibit 1</u> and the Memorandum of Points and Authorities filed herewith.

10

**FACTUAL BACKGROUND AND CASE SUMMARY**

11

12.     Plaintiff was employed by Defendant as an Account Manager during the Class

12

Period.  The putative class consists of approximately 330 current and former Account Managers

13

employed during the Class Period.

14

13.     Plaintiff alleges that Defendant applies a uniform wage exemption to Account

15

Managers, categorizing them as exempt outside salespeople who are not entitled to overtime or

16

minimum wages.  Because Defendant classifies Account Managers as outside salespeople, it does

17

not attempt to comply with federal and state wage and hour laws applicable to nonexempt

18

employees.  Defendant does not keep records indicating whether a particular Account Manager

19

actually qualifies for the exemption and does not monitor any potential changes in applying the

20

exemption.

21

14.     Plaintiff claims that Account Managers are not properly classified as outside

22

salespersons under California law.  Specifically, Plaintiff claims that Account Managers do not

23

spend more than 50% of their time engaging in sales activities, and therefore do not qualify for the

24

state law exemption.  Instead, Account Managers spend far more time at their home offices

25

fulfilling administrative tasks and completing work incidental to sales.  For example, Plaintiff spent

26

anywhere from 6 to 8 hours per day on her computer at home completing administrative work and

27

paperwork incidental to sales.

28

- 4 -

**DECLARATION OF HUNTER PYLE ISO PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
Case No.  3:13-cv-02540-JD**

15.     Defendant maintains that it provides Account Managers will general guidelines that require that they spend more than 50% of their time out in the field interfacing with customers, as set forth in their uniform policy called "Sacred Selling Time." Defendant further maintains that much of the administrative tasks and paperwork performed by Account Managers are directly related to their sales functions and are therefore considered sales activities for purposes of applying the outside salesperson exemption. Therefore, Defendant maintains that at all times the Account Managers employed by Defendant have properly been properly classified as exempt outside salespersons.

16.     Class Counsel has conducted a thorough investigation into the relevant facts and legal claims. Class Counsel propounded written discovery on October 24, 2013. Further, Class Counsel informally requested several categories of information from Defendant that were required in order to evaluate the potential damages and engage in meaningful settlement discussions. Class Counsel closely reviewed the data provided by Defendant to determine the amount of damages potentially available to Class Members. Class Counsel also contacted and extensively interviewed approximately fifty former and current Class Members. Class Counsel identified a select group of Class Members who are prepared to submit declarations in support of class certification.

17.     Mediation was conducted with David Rotman, Esq. on May 6, 2014. Counsel for the Parties fully briefed their positions to the mediator. After a full day of extensive arms-length negotiations by and among the Parties, the Parties reached this Settlement at approximately 9:00 p.m.

18.     Based on an independent investigation and evaluation, Class Counsel are of the opinion that the Settlement with Defendant for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate, and is in the best interest of the Class Members in light of all known facts and circumstances, including the risk of significant delay, the risk that if this matter is litigated a Class may not be certified by the Court or that it may later be decertified, the risk that Defendant will prevail on its defenses, as well as potential appellate issues.

## PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

19.     Class Counsel are of the belief that the relevant factors favor the approval of the Settlement, as described below.

**The Settlement is the Product of Informed, Non-Collusive Negotiation.**

20.     Each side has apprised the other of their respective factual contentions, legal theories and defenses, resulting in extensive arms-length negotiations taking place among the parties. On May 6, 2014, the Parties attended a full-day mediation with experienced mediator David Rotman, Esq. and reached this Settlement at 9:00 p.m. after protracted negotiations.

21.     The Settlement Agreement was reached through arm's-length negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case. Class Counsel have a great deal of experience in class action litigation and focus on employment wage and hour matters, as further explained below. The parties engaged in a comprehensive exchange of information and each conducted an extensive investigation of the factual allegations involved in this case.

**The Strength of Plaintiff's Case and the Risk of Further Litigation.**

22.     Further litigation carries numerous risks and obstacles for Plaintiff and Account Managers, as described below.

23.     First, Plaintiff largely relies on the uniform policy of exemption to establish predominance. Plaintiff will also argue that other common issues also predominate, such as whether the job expectations and actual job duties are exempt sales activities. However, this approach may not be successful under applicable caselaw. Therefore, Plaintiff may not be able to certify the proposed Class of Account Managers.

24.     Second, even assuming Plaintiff is able to certify the proposed Class, Plaintiff acknowledges that the Class would face difficulties in demonstrating that Account Managers were improperly classified.

25.     Under California law, the application of the exemption depends on whether an individual spends more than half of his or her actual working hours selling or obtaining orders or

- 6 -

1   contracts.

2       26.     Plaintiff believes that Account Managers have strong claims that they were

3   misclassified as outside salespersons because they do not spend more than half of their actual

4   working hours selling or obtaining orders. For example, Account Managers spend a significant

5   amount of time working at home, performing administrative tasks, preparing quotes, scheduling

6   meetings, responding to emails, and resolving issues with clients. However, Defendant will argue

7   that a majority of these tasks are related to the ultimate goal of sales.

8       27.     Additionally, Defendant has written guidelines regarding expectations for Account

9   Managers, including that Account Managers must spend more than 50% of their time out in the

10  field interfacing with customers. Defendant refers to this uniform policy as "Sacred Selling Time."

11  Sacred Selling Time requires that Account Managers engage in face to face sales time with their

12  clients from 8:00 a.m. to 3:00 p.m. If Defendant is able to prove these allegations, there is a

13  significant risk that Account Managers will be unable to demonstrate that they are improperly

14  classified as outside salespersons.

15      28.     Even assuming Plaintiff could show that Account Managers were not outside

16  salespersons, Defendant could assert numerous defenses regarding liability and damages.

17      29.     First, Defendant will likely argue that there is little or no credible evidence that

18  Plaintiff and Account Managers worked overtime hours. Account Managers worked independently

19  and controlled their own schedules to a large degree. Therefore, to the extent that Account

20  Managers did work overtime hours, Defendant will argue that they did so by their own choice and

21  that Defendant had no requirement or knowledge of any overtime work.

22      30.     With regard to Plaintiff's claims for wage statement and waiting time penalties, both

23  claims are derivative of Plaintiff's primary overtime allegations. Thus, Plaintiff would recover

24  nothing for herself or the Class if the underlying claims are unsuccessful.

25      31.     Further, with regard to waiting time penalties, Defendant will argue that there was a

26  good faith dispute regarding whether Class Members were owed any wages at the time their

27  employment ended. Defendant will also contend that to the extent that it failed to pay any wages to

28

- 7 -

1   class members, its failure was not willful.

2       32.    In regard to wage statements, Defendant will argue that the statute provides for

3   penalties only if Plaintiff proves that Defendant's violations were both knowing and intentional.

4   Class Counsel concedes that Plaintiff may be unable to demonstrate that Defendant's failure to

5   include overtime on her earnings statement was both knowing and intentional.

6       **The Settlement Falls Within the Range of Possible Approval.**

7       33.    Without conceding that any adverse rulings would be justified, Plaintiff recognizes

8   the risk of such outcomes as described above.

9       34.    If Defendant is able to prove that Account Managers are properly classified as

10   outside sales employees, then the value of the case is zero. All of Plaintiff's claims and damages

11   rely upon this threshold issue.

12       35.    If Plaintiff is able to demonstrate that Account Managers are not outside sales

13   employees, then the value of Plaintiff's claims depend on the number of overtime hours worked by

14   Class Members. For example, if Defendant shows that Account Managers did not work any

15   significant overtime, then the Class's overtime damages are zero. If Plaintiff is able to prove that

16   Account Managers worked approximately one hour of overtime per day (five hours per week), then

17   the Class's overtime damages are approximately $7,000,000.00.  If Plaintiff is able to prove that

18   Account Managers worked approximately three hours of overtime per day (15 hours per week),

19   then the Class's overtime damages through the present equal approximately $21,000,000.00.

20   Therefore, the potential range of the settlement is between zero and $21,000,000.00.

21       36.    Likewise, with respect to Plaintiff's claims for wage statement and waiting time

22   penalties, if Defendant prevails on the issue of liability, the value of these claims is zero. If

23   Plaintiff prevails, the potential recovery for those claims would be over $1,600,000.00.

24       37.    In order to properly value the claims at issue, these figures must be reduced

25   according to the likelihood that Plaintiff will prevail on her motion for class certification, and

26   according to the likelihood that she will prevail on her claims.  As set forth above, for the purposes

27   of settlement only Plaintiff concedes that this case faces significant hurdles at both the certification

28

- 8 -

**DECLARATION OF HUNTER PYLE ISO PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
Case No.  3:13-cv-02540-JD**

1   and the liability phases.

2   38.    Based on the foregoing, the Settlement will result in a fair and reasonable award to

3   Class members in light of the litigation risks. The net amount to be paid to the Class under the

4   proposed Settlement (after payment of Class Counsel's attorneys' fees and costs, PAGA Penalties,

5   Settlement Administration Costs, and the Class Representative Enhancement), will be

6   approximately $455,500.00.  The average Class Member payout will be approximately $1,380.00.

7   39.    Thus, the Settlement avoids the risks of litigation while ensuring that Class

8   Members receive substantial consideration for a release of their claims.

9   40.    The Settlement also affords relief to Class Members who likely would never have

10  filed individual claims.

11  **Plaintiff's Request for Attorneys' Fees and Costs.**

12  41.    Class Counsel will request 30% of the Gross Settlement Amount in fees and up to

13  $10,000.00 in costs for their significant investment of time and expense over the last fifteen

14  months, their contingent fee risk, and the result that they have achieved.

15  42.    Class Counsel's request for attorneys' fees compares favorably to its lodestar.  From

16  March 22, 2013 to the date of this filing, my firm has worked a total of more than 223 attorney

17  hours between myself and my associate Mana Barari.  Further, my co-counsel, the Law Office of

18  Thomas W. Falvey, have worked 173 attorney hours between Mr. Falvey and his associate Michael

19  Boyamian.  Therefore, Class Counsel's lodestar to date is over $230,000.00.

20  43.    Class Counsel further anticipates expending at least 60 additional hours of attorney

21  time in obtaining preliminary and final approval of the Settlement, responding to the frequent

22  communications Class Counsel anticipates receiving from Class Members and Plaintiff; monitoring

23  claims administration, assisting with outreach to the Class, responding to potential objectors, and

24  monitoring compliance with the Settlement Agreement.

25  44.    In light of the statutory fees and compensable reasonable hours spent by Class

26  Counsel in prosecuting this case, Class Counsel believes its request for fees of $214,500.00 and

27  costs of up to $10,000.00 is reasonable.

28  - 9 -

45.     Class Counsel shall file their application for fees and costs no later than 10 days after the Preliminary Approval Date, so that Class Members can be fully informed of the fee request and have ample time to consider the request prior to the deadline for objecting and opting out.

**Plaintiff's Request for an Enhancement Award.**

46.     Class Counsel believe that the Class Representative Enhancement award up to the total amount requested of $10,000.00 is consistent with a fair, just and adequate settlement. Plaintiff initiated this case and sought counsel to represent the proposed Class. Plaintiff met with Class Counsel and provided documentary evidence relevant to the claims in the case, discussed case strategy and assisted Class Counsel in evaluating settlement options.

47.     Plaintiff also risked her own professional reputation by suing her former employer. Any potential future employer who searches the internet or runs a background check on Plaintiff will discover this fact. In a competitive job market, this factor may weigh heavily against her. Therefore, Plaintiff has also undertaken risks with respect to her future employment prospects.

48.     Plaintiff will provide a supporting declaration at final approval describing her efforts in this case, the amount of time spent serving the class, and the risks she incurred.

**The Settlement Administrator Costs.**

49.     We propose appointing Gilardi & Co., LLC ("Gilardi") as the Settlement Administrator in this case. We obtained three bids from different settlement administrators of settlement administration costs in this case. We have elected to use Gilardi as the Settlement Administrator because it offered a competitive bid and because of positive prior experiences.

50.     The Gilardi estimate is attached hereto as Exhibit 2. The estimate from Gilardi provides that the settlement administration costs will equal approximately $14.605.00. Plaintiff has allocated up to $20,000.00 for settlement administration costs as a precaution, since administration costs sometimes increase during the administration process. The final settlement costs and supporting documentation will be submitted to the Court prior to the final approval hearing.

DECLARATION OF HUNTER PYLE ISO PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT
Case No.  3:13-cv-02540-JD

1

**THE CLASS SHOULD BE PROVISIONALLY CERTIFIED**

2      51.     For purposes of this Settlement only, Defendant has agreed that the proposed Class

3   satisfies the requirements for class certification set forth in Rule 23.

4      52.     In this case, the putative class consists of approximately 330 Class Members who

5   worked for Defendant during the Class Period.

6      53.     Questions of law and fact common to the proposed Class include whether Class

7   Members were improperly classified as outsides sales employees, whether Class Members spend a

8   majority of their working hours performing sales-related activities, whether Class Members

9   receive(d) uniform training on how to perform their job duties as Account Managers, and which, if

10  any, of the tasks performed by Account Managers constitute exempt sales-related activity.

11     54.     Like all Class Members, Plaintiff was unlawfully classified as an exempt outside

12  salesperson, and regularly worked unpaid overtime hours.  Because Defendant's policies and

13  procedures were uniform and applied to all Account Managers, the Plaintiff's wage and hour

14  claims against Defendant are typical of those of the Class.

15     55.     There are no conflicts and Class Representative has claims that are in line with those

16  of the Class.  Plaintiff has diligently participated in the litigation by communicating regularly with

17  counsel and providing documents and information about the Class claims.

18     56.     Class Counsel have identified, investigated and prosecuted the claims; have

19  extensive experience in class action litigation, including wage-and-hour claims of the type asserted

20  here, and have been appointed Class Counsel in numerous other cases; and have demonstrated that

21  they have the ability and resources to vigorously pursue the claims.

22     57.     Plaintiff's claims turn on the following common liability issue: whether the Class

23  Members are properly classified as exempt outside sales employees under California law, based on

24  the job duties and expectations applicable to all Account Managers.

25     58.     Given the risks and costs of individual litigation, it is unlikely that individual

26  Account Managers would be willing to litigate these claims on their own.  If they were, it would

27  create a large burden on judicial resources.

28

- 11 -

1       I declare under penalty of the laws of the state of California that the foregoing is true and

2   correct and that this declaration was executed on this 2nd day of July 2014, in Oakland, California.

3

4   _____

5   , Hunter Pyle

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF HUNTER PYLE ISO PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**Case No.  3:13-cv-02540-JD**

# EXHIBIT 1

LAW OFFICES OF THOMAS W. FALVEY
THOMAS W. FALVEY, SBN 65744
MICHAEL H. BOYAMIAN, SBN 256107
550 No. Brand Blvd., Suite 1500
Glendale, California 91203
Telephone:  (818) 547-5200
Facsimile:  (818) 500-9307
E-mail: thomaswfalvey@gmail.com

SUNDEEN SALINAS & PYLE
HUNTER PYLE, SBN 191125
MANA BARARI, SBN 275328
428 13th Street, 8th Floor
Oakland, California 94612
Telephone: (510) 663-9240
Facsimile: (510) 663-9241
E-mail: hpyle@ssrplaw.com

Attorneys for Plaintiff MARITZA STOVALL-GUSMAN,
on behalf of herself, all others similarly situated, and the
general public

DOUGLAS J. FARMER, State Bar No. 139646
douglas.farmer@ogletreedeakins.com
CHRISTOPHER M. AHEARN, State Bar No. 239089
chris.ahearn@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA  94105
Telephone:    415.442.4810
Facsimile:    415.442.4870

Attorneys for Defendant
W.W. DEFENDANT

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

MARITZA STOVALL-GUSMAN,

      Plaintiff,

    v.

W.W. GRAINGER,

      Defendant.

Case No. 3:13-cv-02540-JD

**JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE**

Complaint Filed:  August 27, 2013

1     Subject to the approval of the Court pursuant to Federal Rule of Civil Procedure 23, Plaintiff

2  MARITZA STOVALL-GUSMAN ("Plaintiff"), on behalf of herself and the Class defined below,

3  enter into this Agreement with Defendant W.W. GRAINGER ("Defendant") (Plaintiff and Defendant

4  are collectively the "Parties") to settle this Action and subject to the terms and conditions described

5  below.

## I.  DEFINITIONS

7     1.     Unless otherwise defined herein, capitalized terms used in this Joint Stipulation of

8  Class Action Settlement and Release ("Joint Stipulation" or "Settlement") shall have the meanings set

9  forth below:

10         a.     "Action" refers to the state court action filed in the Superior Court of

11  California, Alameda County, entitled MARITZA STOVALL-GUSMAN, on behalf of herself, and all

12  others similarly situated v. W.W. GRAINGER, Case Number RG11562117.  The Action was

13  removed to federal court by Defendant on June 5, 2013, Case Number 3:13-cv-02540-JD.

14         b.     "Class" or "Class Members" is defined as all individuals who fall within the

15  definition of the putative class alleged in Plaintiff's operative complaint.

16         c.     "Class Counsel" shall collectively refer to Tom Falvey and Mike Boyamian of

17  Falvey Law Firm and Hunter Pyle and Mana Barari of Sundeen Salinas & Pyle.

18         d.     "Class Period" shall mean from March 22, 2009, through the Preliminary

19  Approval Date.

20         e.     "Class Representative" shall refer to Plaintiff Maritza Stovall-Gusman.

21         f.     "Class Representative Enhancement" shall refer to a payment to the Class

22  Representative for her services in this Action and as consideration for her general release of all

23  individual claims against Defendant.  This payment is subject to Court approval and shall not exceed

24  $10,000.

25         g.     "Court" refers to the United States District Court, Northern District of

26  California, San Francisco Division, the Honorable James Donato presiding.

27         h.     "Defense Counsel" shall refer to Douglas Farmer and Christopher Ahearn of

28  Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and Defendant's in-house counsel Hank Galatz.

1       i.      "Effective Date" means the last to occur of the following: (a) if there are no

2   objections to the Settlement, then the Final Approval Date; (b) if there are one or more objections to

3   the Settlement, and if an appeal, review or writ is not sought from the Final Judgment, the 31st day

4   after entry of the Final Judgment; or (c) if an appeal, review or writ is sought from the Final

5   Judgment, the day after the Final Judgment is affirmed or the appeal, review or writ is dismissed or

6   denied, and the Final Judgment is no longer subject to further judicial review.

7       j.      "Final Approval Date" means the date the Order Granting Final Approval of

8   Proposed Class Action Settlement is signed by the Court.

9       k.      "Final Approval Order" means the Order Granting Final Approval of Proposed

10   Class Action Settlement.

11      l.      "Final Approval Hearing" means a hearing set by the Court to review the

12   Settlement and determine whether the Court should give final approval to this Settlement, consider

13   any timely objections made pursuant to the terms of this Settlement, consider the request for

14   attorneys' fees and costs submitted by Class Counsel, and consider Plaintiff's request for a Class

15   Representative Enhancement payment.

16      m.      "Gross Settlement Amount" means the sum of seven hundred and fifteen

17   thousand dollars and zero cents ($715,000.00) that Defendant agrees to pay to settle this lawsuit and

18   shall include attorneys' fees and costs (not to exceed 30% of the Gross Settlement Amount in

19   attorneys' fees and up to $10,000.00 in costs), the Class Representative Enhancement (not to exceed

20   $10,000.00), a $5,000.00 payment to the Labor and Workforce Development Agency ("LWDA"), and

21   Settlement Administrator Costs, not to exceed $14,605.00.  The Gross Settlement Amount excludes

22   Defendant's share of payroll taxes, which shall be calculated by the Settlement Administrator and

23   provided to Defendant within thirty (30) days of the Effective Date.

24      n.      "Net Settlement Amount" shall be the remainder of the Gross Settlement

25   Amount after deductions for attorneys' fees and costs (not to exceed 30% of the Gross Settlement

26   Amount in attorneys' fees and up to $10,000.00 in costs), the Class Representative Enhancement,

27   payment to the Labor and Workforce Development Agency ("LWDA"), and Settlement Administrator

28   Costs.  The Net Settlement Fund shall be established by the Settlement Administrator for the benefit

2014 - 07-01-14 -
Draft Joint Stip of

1     of Class Members and from which Class Members shall be paid.

2            o.     "Notice" shall mean the Notice of Class Action Settlement, substantially in the

3     form attached hereto as Exhibit A, which the Settlement Administrator will mail to each Class

4     Member explaining the terms of the Settlement.  Exhibit A is the notice approved by the Parties and

5     subject to Court approval.

6            p.     "Preliminary Approval Date" means the date the Order Granting Preliminary

7     Approval of Proposed Class Action Settlement is signed by the Court.

8            q.     "Preliminary Approval Order" means the Order Granting Preliminary Approval

9     of Proposed Class Action Settlement.

10           r.     "Released Parties" or "Releasees" means defendant W.W. Defendant, Inc., and

11    all present and former parent companies, subsidiaries, divisions, related or affiliated companies,

12    shareholders, officers, directors, employees, agents, attorneys, insurers, successors and assigns, and

13    any individual or entity which could be jointly liable with Defendant, or any of them (hereinafter

14    "Releasees"), and their counsel of record.

15           s.     "Settlement" or "Settlement Agreement" shall mean this Joint Stipulation and

16    the class action settlement contemplated by this Joint Stipulation.

17           t.     "Settlement Administrator" shall be a third-party claims administrator agreed

18    upon by the Parties to perform the customary duties of a Settlement Administrator including, but not

19    limited to, the duties enumerated in this Settlement.  The final selection shall be subject to Court

20    approval.

21           u.     "Settlement Administrator Costs" shall mean the total cost of third-party

22    administration in order to ultimately make all payments to Class Members.  Settlement Administrator

23    Costs include all costs of administering the Settlement, including but not limited to all tax document

24    preparation, custodial fees, and accounting fees; all costs and fees associated with preparing, issuing

25    and mailing any and all notices and other correspondence to Class Members, all costs and fees

26    associated with computing, processing, reviewing, and distributing the Net Settlement Fund, and

27    resolving disputed claims; all costs and fees associated with calculating tax withholdings and payroll

28    taxes and making related payment to federal state tax authorities and issuing tax forms relating to

!014 - 07-01-14 -
Draft Joint Stip of

1    payments made under the Settlement; all costs and fees associated with any other payments to be

2    made out of or into the Net Settlement Fund; all costs and fees associated with preparing any tax

3    returns and any other filings required by any governmental taxing authority or agency; all costs and

4    fees associated with preparing any other notices, reports, or filings to be prepared in the course of

5    administering disbursements from the Net Settlement Fund; and any other costs and fees incurred

6    and/or charged by the Administrator in connection with the execution of its duties under this

7    Agreement.

8                    **II.  BACKGROUND AND REASONS FOR SETTLEMENT**

9        2.       On March 22, 2013, Plaintiff filed this case in Alameda County Superior Court on

10   behalf of California residents who are or have been employed as Account Managers for Defendant

11   during the period commencing March 22, 2009 through the present.

12       3.       The Complaint states the following causes of action: (1) Unpaid Wages; (2) Failure to

13   Pay Minimum Wages; (3) Failure to Pay Overtime Compensation; (4) Failure to Furnish Accurate

14   Wage Statements; (5) Failure to Pay All Wages in a Timely Manner; (6) Failure to Pay All Wages

15   Following Resignation or Termination; (7) Unfair Business Practices; (8) Failure to Reimburse

16   Expenses; and (9) penalties under the Private Attorneys General Act.

17       4.       On June 5, 2013, Defendant removed this case to federal court for the Northern District

18   of California.  One June 25, 2013, the case was reassigned to the Honorable Richard Seeborg.  On

19   April 16, 2014, the case was reassigned to the Honorable James Donato.

20       5.       Mediation was conducted with David Rotman, Esq. on May 6, 2014.  Counsel for the

21   Parties fully briefed their positions to the mediator.  After extensive arms-length negotiations by and

22   among the Parties on May 6, 2014, the Parties reached this Settlement.

23       6.       Class Counsel conducted a thorough investigation into the facts of the Action.  Class

24   Counsel propounded written discovery on October 24, 2013.  Further, Class Counsel informally

25   requested several categories of information from Defendant that it required in order to evaluate the

26   potential damages and engage in meaningful settlement discussions.  Class Counsel closely reviewed

27   the data provided by Defendant to determine the amount of damages potentially available to Class

28   Members.

1        7.     Class Counsel also contacted and extensively interviewed approximately fifty former

2    and current Class Members.  Class Counsel also pursued contacts provided by Plaintiff and further

3    contacts provided by Class Members it spoke to.  Many of these Class Members are prepared to

4    submit declarations in support of class certification.

5        8.     Based on an independent investigation and evaluation, Class Counsel are of the

6    opinion that the Settlement with Defendant for the consideration and on the terms set forth in this

7    Joint Stipulation is fair, reasonable, and adequate, and is in the best interest of the Class Members in

8    light of all known facts and circumstances, including the risk of significant delay, the risk that if this

9    matter is litigated a Class may not be certified by the Court or that it may later be decertified, the risk

10   that Defendant will prevail on its defenses, as well as potential appellate issues.

11       9.     The Parties agree to cooperate and take all steps necessary and appropriate to obtain

12   preliminary and final approval of this Settlement, to effectuate its terms, and to dismiss the Action

13   with prejudice.

14                   **III.   TERMS OF THE SETTLEMENT**

15       10.    <u>Settlement Payment.</u>

16           a.     Defendant agrees to pay seven hundred fifteen thousand dollars and zero cents

17   ($715,000.00) to settle the Action, which shall include attorneys' fees and costs, the Class

18   Representative Enhancement, the $5,000.00 payment to the LWDA, and court-approved costs of

19   settlement administration.  Defendant has also agreed to pay for the cost of mediation in this case.

20           b.     Defendant shall transfer the full amount of the Gross Settlement Amount to the

21   Settlement Administrator within twenty-one (21) days of the Final Approval Date.

22           c.     Within thirty (30) calendar days of the Effective Date, the Settlement

23   Administrator will transmit the payments for attorneys' fees and costs and the Class Representative

24   Enhancement to Class Counsel, and the payment of $5,000.00 to the LWDA.

25           d.     Within sixty (60) calendar days of the Effective Date, the Settlement

26   Administrator will mail the payments to the Class Members who have not opted out from the

27   Settlement by submitting valid and timely exclusion forms.

28   \\\

2014 - 07-01-14 -
Draft Joint Stip of

1    11.    Payments and Distribution.

2         a.    It is understood between the Parties that this is not a Claims-Made Settlement.

3    This means that Class Members will receive a portion of the Net Settlement Amount as long as they

4    do not opt out of the Settlement by submitting valid and timely exclusion forms to the Settlement

5    Administrator, as set forth below and as explained in the Notice.

6         b.    Payments to Class Members from the Net Settlement Fund shall be allocated as

7    follows:  one-third (33.33%) shall be allocated to unpaid wages for which the Settlement

8    Administrator will issue IRS Forms W-2, one-third (33.33%) shall be allocated as unpaid interest for

9    which the Settlement Administrator will issue IRS Forms 1099 INT; and one-third (33%) shall be

10   allocated as unpaid penalties for which the Settlement Administrator will issue IRS Forms 1099

11   MISC.

12        c.    As soon as practicable, the Settlement Administrator will notify Defense

13   Counsel of how much Defendant owes in payroll taxes.  Within thirty (30) days of such notice,

14   Defendant will remit to the Settlement Administrator a check in the amount of the payroll taxes owed.

15   The Settlement Administrator will then pay the Defendant's payroll taxes to the appropriate

16   governmental entities.

17        d.    The Settlement Administrator will calculate the individual settlement awards to

18   eligible Class Members.  Defendant will provide the dates of employment for each Class Member in a

19   class position during the Class Period.  Fractional work weeks shall be rounded up.  Class Members

20   who worked less than one work week will be credited with one work week.   Current employees will

21   be credited for work weeks up until the Preliminary Approval Date.

22        e.    In order to calculate each Class Member's share of the settlement, the

23   Settlement Administrator will use the following formulas:

24             i.    Each Class Member's numerator shall be the total number of work

25                  weeks worked;

26             ii.   The denominator shall be the aggregate amount of all numerators;

27             iii.  Each Class Member's proportionate share of the settlement shall be the

28                  Class Member's numerator divided by the denominator;

:014 - 07-01-14 -
Draft Joint Stip of

1      iv.     The Settlement Administrator will multiply the Net Settlement Amount

2              by each Class Member's proportionate share of the settlement

3              numerator to determine that Class Member's settlement award.

4      f.      Checks issued to Class Members pursuant to this Settlement shall remain

5  negotiable for a period of one-hundred and eighty (180) days from the date of mailing.  Class

6  Members who fail to negotiate (i.e., cash or deposit) their check(s) in a timely fashion shall remain

7  subject to the terms of this Settlement.  After the expiration of one-hundred and eighty (180) days, the

8  sum of any un-cashed/un-deposited checks shall revert to the Net Settlement Amount and shall be

9  distributed to the unclaimed property fund of the California State Controller's Office.

10     g.      Defendant's data will be presumed to be correct.  All compensation disputes

11  will be resolved and decided by the Settlement Administrator and the Settlement Administrator's

12  decision on all compensation disputes will be final and non-appealable.

13     h.      Under no circumstances will the Gross Settlement Amount or any portion

14  thereof revert back to Defendant.

15     12.     Attorneys' Fees, Costs, and Class Representative Enhancements.

16     a.      The Action alleges a potential claim for attorneys' fees and costs pursuant to,

17  *inter alia*, California Labor Code sections 218.5, 226(e), 2802 and Code of Civil Procedure section

18  1021.5. The Parties and Class Counsel agree that any and all such claims for attorneys' fees and costs

19  have been settled in this Joint Stipulation subject only to approval by the Court.

20     b.      Class Counsel may apply for, and Defendant will not oppose, an award of

21  attorneys' fees in an amount up to thirty percent (30%) of the Gross Settlement Amount (two hundred

22  and fourteen thousand and five hundred dollars (or $214,500.00)), and costs of up to $10,000.00, all

23  of which shall be paid exclusively from the Gross Settlement Amount, and will compensate Class

24  Counsel for all of the work already performed, and expenses already incurred, in the Action and all

25  work remaining to be performed in documenting the Settlement, securing Court approval of the

26  Settlement, administering the Settlement, ensuring that the Settlement is fairly administered and

27  implemented, obtaining dismissal of the Action with prejudice, and defending against any appeals, as

28  well as all associated expenses.

1        c.      The substance of Class Counsel's application for attorneys' fees and costs is

2   not part of this Settlement, and is to be considered separately from the Court's consideration of the

3   fairness, reasonableness, adequacy, and good faith of the settlement of the Action.  Any proceedings

4   related to Class Counsel's application for attorneys' fees shall not terminate or cancel this Settlement,

5   or otherwise affect the finality of the Final Approval Order.  In the event that Class Counsel appeal

6   the Court's decision on fees, the amount of fees approved by the Superior Court and not in dispute

7   shall be distributed to Class Counsel on the 31st day following the Final Approval Date and the

8   amount of fees claimed by Class Counsel that are not approved by the Superior Court and which are

9   subject to an appeal by Class Counsel, if any, shall, on the 31st day following the Final Approval Date,

10  be forwarded to the Settlement Administrator, who will be responsible for keeping those disputed

11  funds until the appeal is resolved and distributing them in accordance with the decision stemming

12  from the appeal.  Any such appeal by Class Counsel shall not hold up or in any way delay the

13  distribution of the undisputed Net Settlement Amount to Class Members or the distribution of the

14  undisputed fees to Class Counsel.  Defendant will not oppose Class Counsel's fee application in any

15  appellate proceeding as long as the total amount of attorneys' fees sought by Class Counsel does not

16  exceed 30% of the Gross Settlement Amount.

17        d.      In the event that Class Counsel are not awarded their requested fees and costs,

18  in whole or in part, no non-awarded fees or costs shall revert to Defendant, but instead shall revert to

19  the Net Settlement Amount.

20        e.      The Class Representative Enhancement is in addition to the Plaintiff's

21  individual settlement award.  In exchange for the Class Representative Enhancement (up to but not to

22  exceed $10,000.00), the Class Representative must execute a general release in favor of Defendant.

23  Defendant will not oppose Plaintiff's enhancement petition so long as it does not exceed $10,000.00.

24  An IRS Form 1099 will be issued by the Settlement Administrator to Plaintiff for the Class

25  Representative Enhancement. In the event that the Class Representative Enhancement is not awarded

26  the requested $10,000.00, in whole or in part, no part of the requested award shall revert to Defendant,

27  but instead shall revert to the Net Settlement Amount.

28  \\\

1    13.    Costs of Settlement Administration.

2        a.    The Settlement Administrator shall be entitled to payment, from the Gross

3    Settlement Amount, for the reasonable costs of administering this settlement up to $14,605.00.  In the

4    event that the Settlement Administrator's reasonable costs of administering this settlement exceed

5    $14,605.00, the Settlement Administrator shall file a declaration with the Court explaining the basis

6    for the costs above $14,605.00 and seeking approval for payment of the additional reasonable costs

7    out of the amount remaining from the Net Settlement Fund.  The Settlement Administrator shall not

8    be paid for costs above $14,605.00 absent Court approval.

9    14.    Limitations on use of Settlement.

10        a.    Non-Admission.  Nothing in this Stipulation shall be construed as or deemed to

11    be an admission by any Party of any liability, culpability, negligence, or wrongdoing toward any other

12    Party, or any other person, and the Parties specifically disclaim any liability, culpability, negligence,

13    or wrongdoing toward the each other or any other person. Each of the Parties has entered into this

14    Stipulation with the intention to avoid further disputes and litigation with the attendant inconvenience,

15    expenses, and contingencies. Nothing herein shall constitute any admission by Defendant of

16    wrongdoing or liability, or of the truth of any factual allegations in the Action. Nothing herein shall

17    constitute any admission by Named Plaintiff regarding the merits of the Claims in this Action,

18    including but not limited to claims for unpaid wages under California law. Nothing herein shall

19    constitute an admission by Defendant that the Action was properly brought as a class or representative

20    action other than for settlement purposes. To the contrary, Defendant has denied and continues to

21    deny each and every material factual allegation and all Claims. To this end, the Settlement of the

22    Action, the negotiation and execution of this Stipulation, and all acts performed or documents

23    executed pursuant to or in furtherance of this Stipulation or the Settlement are not, shall not be

24    deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the

25    part of Defendant or of the truth of any of the factual allegations in the Complaint in the Action; and

26    are not, shall not be deemed to be, and may not be used as, an admission or evidence of any fault or

27    omission on the part of Defendant in any civil, criminal or administrative proceeding in any court,

28    administrative agency or other tribunal.

:014 - 07-01-14 -
Draft Joint Stip of

b.      Neither this Settlement nor any of its terms shall be offered or used as evidence by any of the Parties, Class Members, or their respective counsel in this Action or any other administrative or legal proceeding, excluding only proceedings to approve and/or enforce this Settlement.

c.      Except as otherwise provided in this Settlement, failure of approval or invalidation of any material portion of this Settlement shall invalidate this Settlement in its entirety unless the Parties subsequently agree in writing that the remaining provisions shall remain in full force and effect.

15.     _Media or Press._ Named Plaintiff and Defendant, and their respective counsel, recognize, and accept that the Parties to this Stipulation desire that the terms of this Stipulation, the fact of the Settlement embodied in this Stipulation, the disposition of the Action, the Action, and all matters relating to the litigation of the Action, including discovery proceedings therein, and evidence obtained during the course of the Action, shall not be discussed with or presented to the media or press or advertised in any fashion other than as indicated in this Stipulation.

## IV.  NOTICE TO SETTLEMENT CLASS

16.     _Payments and Distribution._  This Settlement is not a claims-made settlement.  Class Members do not need to submit claims in order to participate in the Settlement.

17.     The Notice, attached hereto as Exhibit A and approved by the Court, shall be sent by the Settlement Administrator to the Class Members, by first class mail, within thirty (30) calendar days following the Preliminary Approval Date.  The Notice shall notify each Class Member of the dates of employment within the Class Period for which the Class Member will be credited.  The Class Members will be given the opportunity to dispute their dates of employment.  The Settlement Administrator, after consultation with Class Counsel and Defense Counsel, will have the sole authority to resolve all such disputes.

18.     Within 20 calendar days of the Preliminary Approval Date, Defendant will provide the Settlement Class's identifying information to the Settlement Administrator.

19.     In the event there is missing contact information, the Parties will make their best efforts to obtain and provide the approximate, last-known data/information.

:014 - 07-01-14 -
Draft Joint Stip of

20.    Within 30 calendar days of the Preliminary Approval Date, the Settlement Administrator will mail the Notice to the Settlement Class. Class Members will have 45 days in which to postmark objections, disputes, and/or requests for exclusion. The Settlement Administrator will skip-trace returned mail and re-mail within five days. Under no circumstances will this extend the period for post-marking objections, disputes, and/or requests for exclusion claims by more than an additional 15 days.

21.    If an envelope so mailed has not been returned within thirty (30) days of the mailing, it will be presumed that the Class Member received the Notice.

22.    In addition, the Settlement Administrator shall send a reminder postcard approximately twenty (20) days following the mailing of the Notice.

23.    Those individuals who do not submit valid and timely requests for exclusion shall be deemed "Settlement Class Members."

24.    Class Counsel shall provide the Court, at least ten (10) business days prior to the Final Approval Hearing, a declaration by the Settlement Administrator specifying the due diligence it has undertaken with regard to the mailing of the Notice.

25.    The Settlement Administrator shall be responsible for issuing the payments to Class Members. The Settlement Administrator will file proof of payment with the Court and will serve Class Counsel and Defense Counsel with a copy within ninety (90) calendar days after the Effective Date. The Settlement Administrator shall provide Class Counsel and Defense Counsel with certification that the Gross Settlement Amount was distributed in accordance with this Settlement.

26.    All payments shall include a cover letter that explains that the payments are made in settlement of the *Maritza Stovall-Gusman v. W.W. Defendant, Inc.* case.

### V.  DISPUTES, REQUESTS FOR EXCLUSION, AND OBJECTIONS

27.    The Notice shall provide forty-five (45) days from the mailing date of the Notice for each Class Member to (1) dispute the dates of employment included in the Notice; (2) opt out of the Settlement; or (3) object to the settlement.

28.    If a Class Member wishes to dispute Defendant's start and end dates for his or her employment, the Class Member must submit a written, signed dispute along with supporting

1  documents to the Settlement Administrator at the address provided on the Notice within forty-five

2  (45) calendar days of the postmark date of the Notice. The Settlement Administrator, in its sole

3  discretion and after consulting with Class Counsel and Defense Counsel, will resolve the challenge

4  and make a final and binding determination without hearing or right of appeal within ten (10) calendar

5  days after receiving the challenge and supporting documentation.

6        29.    The Settlement Administrator shall report to Class Counsel and Defense Counsel, in

7  summary or narrative form, the substance of any discrepancies submitted by the Class Member and

8  Defendant's records. The Settlement Administrator and Class Counsel shall be granted reasonable

9  access to Defendant's records that relate to the discrepancies. The Settlement Administrator shall

10  have full authority to resolve any such discrepancies, subject to approval of final payments by the

11  Court.

12        30.    No opt out request will be accepted if postmarked to the Settlement Administrator

13  more than forty-five (45) calendar days after the date the Notice was mailed to the Class Member. All

14  original opt out requests shall be sent directly to the Settlement Administrator at the address indicated

15  on the Notice and the Settlement Administrator will forward such opt out requests to Class Counsel

16  and Defense Counsel. The Settlement Administrator will certify jointly to Class Counsel and Defense

17  Counsel the number of all Class Members who have submitted opt out requests, objections and/or

18  disputes. During the forty-five (45) day period after the date the Notice is mailed to Class Members,

19  the Settlement Administrator will provide this information beginning on the 15th day after the Notice

20  is mailed, and will update this information every following 7 days.

21        31.    No later than twenty-one (21) calendar days prior to the Final Approval Hearing, the

22  Settlement Administrator will submit a list to Class Counsel and Defense Counsel of all timely, valid

23  opt out requests, disputes and all objections received from Class Members.

24        32.    Defendant has the option of withdrawing from the settlement if ten percent (10 %) or

25  more of the Class Members opt out of the Settlement.

26        33.    Any Class Member wishing to object to the Court's approval of this Settlement shall

27  follow the procedures set forth herein and shall file any such written objections and/or memorandums

28  of points and authorities in support thereof with the Court and shall serve Class Counsel and Defense

1    Counsel no later than forty-five (45) days from the mailing of the Notice.  A Class Member who has

2    submitted an opt-out request may not submit any objections to the Settlement.  Any Class Member

3    who fails to file a timely written objection shall be foreclosed from objecting to this Settlement.

4         34.    Class Counsel and Defense Counsel shall file any response to any objections filed by

5    objecting Class Members at least seven (7) calendar days before the Final Approval Hearing.

## VI.  RELEASE OF CLAIMS

7         35.    Released Claims by the Class Members.  Upon the Final Approval Date, Class

8    Members who do not timely opt out shall fully release and discharge the Releasees from all claims,

9    whether known or unknown, that were alleged or asserted, or that could have been alleged or asserted

10   based upon the factual allegations set forth in the operative complaint, in the Action, from March 22,

11   2009, through the Preliminary Approval Date.

12        36.    General Release as to Plaintiff Stovall-Gusman

13              a.    Except as otherwise provided herein, in consideration for the promises set forth

14   in this Agreement, Plaintiff Stovall-Gusman, for herself and her heirs, successors and assigns, does

15   hereby waive, release, acquit and forever discharge Defendant, and each of its past, present and

16   future agents, heirs, assigns, representatives, administrators, affiliates, corporate parents, subsidiaries,

17   sister corporations, and insurers, and their respective officers, directors, shareholders, employers,

18   employees, fiduciaries, benefit plan committees, claims administrators, agents, partners, insurers,

19   attorneys, heirs, successors, assigns, and related entities, corporations or persons (the "Released

20   Parties"), from any and all claims, actions, charges, complaints, grievances and causes of action, of

21   whatever nature, whether known or unknown, which exist or may exist on Plaintiff's behalf as of the

22   date of this Agreement, including but not limited to any and all tort claims, contract claims, wage

23   claims, wrongful termination claims, disability claims, benefit claims, public policy claims,

24   retaliation claims, statutory claims, personal injury claims, emotional distress claims, invasion of

25   privacy claims, defamation claims, fraud claims, *quantum meruit* claims, and any and all claims

26   arising under any federal, state or other governmental statute, law, regulation or ordinance, including,

27   but not limited to claims for violation of the Fair Labor Standards Act, the California Labor Code,

28   the Wage Orders of California's Industrial Welfare Commission, other state wage and hour laws, the

1   Americans with Disabilities Act, the Age Discrimination in Employment Act (ADEA), the Employee

2   Retirement Income Security Act, Title VII of the Civil Rights Act of 1964, the California Fair

3   Employment and Housing Act, the California Family Rights Act, the Family Medical Leave Act,

4   California's Whistleblower Protection Act, California Business & Professions Code Section 17200 et

5   seq., and any and all claims arising under any federal, state or other governmental statute, law,

6   regulation or ordinance.  Except as otherwise provided herein, Defendant, for itself and each of its

7   agents, heirs, assigns, representatives, administrators, and affiliates, and any of their past, present and

8   future corporate parents, administrators, subsidiaries, and affiliates and their respective officers,

9   directors, shareholders, employers, employees, fiduciaries, benefit plan committees, claims

10  administrators, agents, partners, insurers, attorneys, heirs, successors, assigns, and related entities or

11  corporations also waives and releases any and all possible claims or causes of action against Plaintiff

12  that exist on behalf of Defendant as of the date of this Agreement.

13          b.      It is further understood and agreed by Defendant and Plaintiff Stovall-Gusman, and

14  each of them, that as a condition of this Settlement Agreement, as to each other only they hereby

15  expressly waive and relinquish any and all claims, rights or benefits that they may have under

16  California Civil Code section 1542, which provides as follows:

17          "A general release does not extend to claims which the creditor does not know or

18          suspect to exist in his or her favor at the time of executing the release which if known

19          by him or her must have materially affected his or her settlement with the debtor."

20  In connection with such waiver and relinquishment, Defendant and Plaintiff Stovall-Gusman, and

21  each of them, hereby acknowledge that they or their attorneys may hereafter discover claims or facts

22  in addition to, or different from, those which they now know or believe to exist, but that they

23  expressly agree to fully, finally and forever settle and release any and all claims, known or unknown,

24  suspected or unsuspected, which exist or may exist on behalf of or against the other at the time of

25  execution of this Agreement, including, but not limited to, any and all claims relating to or arising

26  from Plaintiff's employment with Defendant.  Defendant and Plaintiff Stovall-Gusman, and each of

27  them, further acknowledge, understand and agree that this representation and commitment is essential

28

1   to each of them and that this Settlement Agreement would not have been entered into were it not for

2   this representation and commitment.

3   **VII.   DUTIES OF THE PARTIES PRIOR TO FINAL COURT APPROVAL**

4       37.   The Parties shall submit this Settlement to the Court in support of Plaintiff's Motion

5   for Preliminary Approval and determination by the Court as to its fairness, adequacy, and

6   reasonableness.

7       38.   Plaintiff shall apply for an Order Granting Preliminary Approval of Proposed Class

8   Action Settlement. The Order sought shall not be opposed by Defendant and shall provide for, among

9   other things, the following:

10       a.   Scheduling a Final Approval Hearing on the question of whether the proposed

11       Settlement should be finally approved as fair, reasonable, and adequate as to the

12       Settlement Class;

13       b.   Approving as to form and content the proposed Notice, attached as Exhibit A;

14       c.   Directing the mailing of the Notice by first class mail to the Class Members;

15       d.   Preliminarily approving the Settlement;

16       e.   Preliminarily certifying the Class for Settlement purposes only; and

17       f.   Approving Tom Falvey and Mike Boyamian of Falvey Law Firm and Hunter Pyle

18       and Mana Barari of Sundeen Salinas & Pyle and as Class Counsel, Maritza Stovall-

19       Gusman as Class Representative, and the Settlement Administrator agreed to by the

20       Parties.

21       39.   Within ninety (90) days of the Preliminary Approval Date, and subject to Court

22   approval, the Parties agree to file final approval papers. Plaintiff shall apply for an Order Granting

23   Final Approval of Class Action Settlement, which shall provide, among other things, as follows:

24       a.   Approving the Settlement, adjudging the terms thereof to be fair, reasonable, and

25       adequate, and directing consummation of its terms and provisions;

26       b.   Approving Class Counsel's application for an award of attorneys' fees and

27       reimbursement of costs;

28       c.   Approving the Class Representative's enhancement award;

:014 - 07-01-14 -
Draft Joint Stip of

1

    d.  Certifying the Class for purposes of this Settlement only; and

2

    e.  Retaining continuing jurisdiction over the implementation, interpretation,

3

        administration, and consummation of the Settlement; and over all parties to the

4

        Settlement for the purpose of taking such other actions as may be necessary to

5

        administer, implement or enforce the Settlement.

6

## VIII.  EFFECT OF NON-APPROVAL

7

    40.    If this Settlement is not preliminarily or finally approved by the Court this Settlement

8

shall be null and void.  In such event, (a) nothing in this Settlement shall be construed as a

9

determination, admission, or concession of any issue in the Action, and nothing in this Settlement

10

may be offered into evidence in any trial on the merits of the claims asserted in this Action; (b) the

11

Parties expressly reserve their rights with respect to the prosecution and defense of the Action as if

12

this Settlement never existed; (c) the Parties shall each be responsible for one-half of any costs for

13

Notice or claims administration incurred by the Settlement Administrator through that date; and (d)

14

any Certification Order will be deemed null and void and the Parties agree to take all steps necessary

15

to ensure that the certification of this action for settlement purposes only will be withdrawn.  If there

16

is any reduction in the attorneys' fees award, such reduction may be appealed as set forth herein, but

17

is not a basis for rendering this Settlement void, voidable, and/or unenforceable.

18

## IX.  PARTIES' AUTHORITY

19

    41.    The respective signatories to the Settlement represent that they are fully authorized to

20

enter into this Settlement and bind the respective Parties to its terms and conditions.

21

## X.  MUTUAL COOPERATION

22

    42.    The Parties agree to fully cooperate with each other to accomplish the terms of this

23

Settlement, including but not limited to, execution of such documents and to take such other action as

24

may reasonably be necessary to implement the terms of this Settlement.  The Parties shall use their

25

best efforts, including all efforts contemplated by this Settlement and any other efforts that may

26

become necessary by order of the Court, or otherwise, to effectuate the terms of this Settlement.  As

27

soon as practicable after execution of this Settlement, Class Counsel shall, with the assistance and

28

:014 - 07-01-14 -
Draft Joint Stip of

1      cooperation of Defendant and their counsel, take all necessary steps to secure the Court's final

2      approval.

3      **XI.  NO PRIOR ASSIGNMENTS**

4      43.     The Parties and Class Counsel represent, covenant, and warrant that they have not

5      directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber

6      to any person or entity any portion of any liability, claim, demand, action, cause of action or right

7      released and discharged in this Settlement.

8      **XII.  NOTICES**

9      44.     Unless otherwise specifically provided, all notices, demands or other communications

10     in connection with this Settlement Agreement shall be: (1) in writing; and (2) sent via United States

11     registered or certified mail, return receipt requested, addressed as follows:

12

13                  To the Class Members:

14                  Hunter Pyle, SBN 191125
                     Mana Barari, SBN 275328

15                  SUNDEEN SALINAS & PYLE
                     428 13th Street, 8th Floor

16                  Oakland, California  94612
                     Telephone: (510) 663-9240

17                  Facsimile: (510) 663-9241

18

19                  Thomas W. Falvey, SBN 65744
                     Michael Boyamian, SBN 256107

20                  LAW OFFICES OF THOMAS W. FALVEY
                     550 No. Brand Blvd., Suite 1500

21                  Glendale, California 91203
                     Telephone:  (818) 547-5200

22                  Facsimile:  (818) 500-9307

23                  To Defendant:

24                  Douglas J. Farmer, SBN 139646
                     Christopher M. Ahearn, SBN 239089

25                  OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
                     Steuart Tower, Suite 1300

26                  One Market Plaza
                     San Francisco, CA 94105

27                  Telephone: (415) 442-4810
                     Facsimile: (415) 442-4870

28

1

## XIII.  CONSTRUCTION

2  45.    The Parties agree that the terms and conditions of this Settlement are the result of

3  lengthy, intensive arms-length negotiations between the Parties and that this Settlement shall not be

4  construed in favor of or against any Party by reason of the extent to which any Party or its counsel

5  participated in the drafting of this Settlement.  The Parties have entered into this Settlement

6  voluntarily and without duress or undue influence.

7

## XIV.  CAPTION AND INTERPRETATIONS

8  46.    Paragraph or Section titles or captions contained herein are inserted as a matter of

9  convenience and for reference, and in no way define, limit, extend, or describe the scope of this

10  Settlement or any provision.  Each term of this Settlement is contractual and not merely a recital.

11

## XV.  MODIFICATION

12  47.    This Settlement may not be changed, altered, or modified, except in writing and signed

13  by the Parties, (and, after it has been submitted to the Court, after any such changes have been

14  approved by the Court).  This Settlement may not be discharged except by performance in accordance

15  with its terms or by a writing signed by the Class Counsel and Defense Counsel.  However, the Parties

16  agree that Defendant may withdraw from the Settlement if ten percent (10%) of the Class Members

17  chose to opt out of the settlement.

18

## XVI.  INTEGRATION CLAUSE

19  48.    This Settlement contains the entire agreement between the Parties relating to the

20  resolution of the Action, and all prior or contemporaneous agreements, understandings,

21  representations, and statements, whether oral or written and whether by a party or such party's legal

22  counsel, are merged in this Settlement.  No rights under this Settlement may be waived except in

23  writing.

24

## XVII.  BINDING ON ASSIGNS

25  49.    This Settlement shall be binding upon and inure to the benefit of the Parties and their

26  respective heirs, trustees, executors, administrators, successors, and assigns.

27  \\\

28  \\\

14 - 07-01-14 -
oft Joint Stip of

---

## XVIII.   CLASS COUNSEL SIGNATORIES

50.     It is agreed that because the members of the Class are so numerous, it is impossible or impractical to have each Class Member sign this Settlement.  The Notice will advise all Class Members of the binding nature of this Settlement and the release contained within this Settlement. Excepting only the Class Members who timely submit an opt out request, this Settlement (once approved by the Court) shall have the same force and effect as if this Settlement were executed by each Class Member.

## XIX.   COUNTERPARTS

51.     This Settlement may be executed in counterparts, and when each Settling Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement, which shall be binding upon and effective as to all Parties.

## XX.   GOVERNING LAW

52.     This Settlement and Exhibit A attached hereto shall be deemed to have been negotiated, executed, and delivered, and to be wholly performed, in the State of California.  The rights and obligations of the Parties under this Settlement shall be construed and enforced in accordance with, and be governed by, the substantive and procedural laws of the State of California without regard to California's choice of law principles.

## XXI.   CONTINUING JURISDICTION

53.     Except as otherwise specifically provided for herein, the Court shall retain jurisdiction to construe, interpret, and enforce this Settlement, to supervise all notices, the administration of the Settlement, and to hear and adjudicate any dispute arising from or related to the Settlement.

Dated: July 1, 2014                              FALVEY LAW FIRM


                                                 By: _____
                                                      Attorneys for Plaintiffs

Dated: July 1, 2014                    SUNDEEN SALINAS & PYLE

                                       By: _____
                                           Attorneys for Plaintiffs

Dated: July 1, 2014                    By: _____
                                           Maritza Stovall-Gusman
                                           Plaintiff

Dated: July 1, 2014                    OGLETREE, DEAKINS, NASH, SMOAK &
                                       STEWART, P.C.

                                       By: _____
                                           Attorneys for Defendant

Dated: July 1 2014                     By: _____
                                           W.W. Grainger, Inc.
                                           Defendant

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**NOTICE OF SETTLEMENT OF CLASS ACTION**
**MARITZA STOVALL-GUSMAN V. W.W. GRAINGER**

**If you were employed by W.W. GRAINGER** as an Account Manager at any time from March 22, 2009 to [insert preliminary approval date], **a class action settlement may affect your rights.**

The United States District Court for the Northern District of California (the "Court") has authorized this notice in *Stovall v. W.W. Grainger,* Case No. 3:13-cv-02540-JD (the "Action").

Please read this notice carefully and in its entirety. A federal court authorized this notice. This is not a solicitation from a lawyer.

- Maritza Stovall-Gusman ("Plaintiff") has sued W.W. Grainger ("Grainger"), alleging claims relating to Grainger's alleged failure to compensate its Account Managers for overtime hours by improperly classifying them as exempt employees.

- The Court has allowed the Action to be a class action on behalf of all Account Managers employed by Grainger from March 22, 2009 to [insert preliminary approval date] (the "Class Period"). The Court has not decided whether Grainger did anything wrong, and Grainger specifically denies violating any laws.

- However, the Court has preliminarily approved a settlement of this case. Your legal rights may be affected, and you have a choice to make now:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **DO NOTHING** | *Receive part of the Settlement.* *If you do not do anything upon receipt of this notice, you will receive a Claim Amount, and you will give up your right to sue for alleged violations and related claims released by the Settlement.* |
| **SUBMIT A WRITTEN REQUEST TO BE EXCLUDED FROM THE SETTLEMENT** | *Opt-out or exclude yourself from the Settlement. Get no benefits from it.* *If you make a valid and timely written request to be excluded from the Settlement, you will not receive any money, and you will not give up any rights you may have.* |
| | |

- Your options are explained in this notice. To request to be excluded from this Settlement, you must act before *[45 days from date of notice].*

- **Please read this notice carefully. See www.ssrplaw.com/Grainger for more information.**

## WHAT THIS NOTICE CONTAINS

| | | |
|---|---|---|
| I. | BACKGROUND OF THE CASE | Page 2 |
| II. | SUMMARY OF THE PROPOSED SETTLEMENT | Page 3 |
| | A. Monetary Settlement | Page 3 |
| | B. Calculation of Claim Amount | Page 3 |
| | C. Release | Page 4 |
| | D. Receive a Settlement Amount | Page 4 |
| | E. Excluding Yourself from the Settlement | Page 4 |
| | F. Objecting to the Settlement | Page 4 |
| III. | FINAL SETTLEMENT APPROVAL HEARING | Page 5 |
| IV. | ADDITIONAL INFORMATION | Page 5 |

You are receiving this notice because the United States District Court for the Northern District of California has granted preliminary approval to a class-action settlement and you are a Class Member in the class certified by the Court.

As a Class Member, your interests are being represented at no expense to you by Thomas Falvey and Michael Boyamian of Law Offices of Thomas W. Falvey, and Hunter Pyle and Mana Barari of Sundeen Salinas & Pyle (collectively "Class Counsel"). You may also hire your own lawyer at your own expense.

## I.      BACKGROUND OF THE CASE

On March 22, 2013, Plaintiff filed this case in the Superior Court of California (Alameda County) on behalf of California residents who are or have been employed as Account Managers for Defendant during the period from March 22, 2009 to the present, alleging claims for (1) Unpaid Wages; (2) Failure to Pay Minimum Wages; (3) Failure to Pay Overtime Compensation; (4) Failure to Furnish Accurate Wage Statements; (5) Failure to Pay All Wages in a Timely Manner; (6) Failure to Pay All Wages Following Resignation or Termination; (7) Unfair Business Practices; (8) Failure to Reimburse Expenses; and (9) penalties under the Private Attorneys General Act.

On June 5, 2013, Grainger removed this case to the United States District Court for the Northern District of California. The case is assigned to the Honorable James Donato.

The lawsuit claims that Account Managers employed by Grainger were misclassified as nonexempt employees and therefore denied their proper overtime pay. The Parties engaged in several months of investigation and damages analysis. Class Counsel conducted a thorough investigation into the facts of the Action. Class Counsel closely reviewed the data provided by Defendant to determine the amount of damages potentially available to Class Members. Class Counsel also contacted and extensively interviewed approximately fifty former and current Class Members.

The Parties conducted mediation with David Rotman, Esq. on May 6, 2014. Counsel for the Parties fully briefed their positions to the mediator. After extensive arms-length negotiations by and among the Parties on May 6, 2014, the Parties reached this Settlement.

This Settlement has been given preliminary approval by the Court, and this notice is being sent to all Class Members. You now have the opportunity to participate in or exclude yourself from the Settlement.

Grainger denies any liability or wrongdoing of any kind associated with the claims alleged in the Action and that will be released by the Settlement, and the Court has not decided whether any violations occurred.

## II.      SUMMARY OF THE PROPOSED SETTLEMENT

### A.      Monetary Settlement

Grainger has agreed to pay seven hundred fifteen thousand dollars and zero cents ($715,000.00) to settle the Action ("Gross Settlement Amount"). The Gross Settlement Amount will include attorneys' fees and costs (not to exceed 30% of the Gross Settlement Amount in attorneys' fees and up to $10,000.00 in costs), the Class Representative Enhancement, payment to the Labor and Workforce Development Agency ("LWDA"), and Settlement Administrator Costs.

The Net Settlement Amount shall be established by the Settlement Administrator for the benefit of Class Members and from which Class Members shall be paid. The Net Settlement Amount shall be the remainder of the Gross Settlement Amount after deductions for attorneys' fees and costs (not to exceed 30% of the Gross Settlement Amount in attorneys' fees and up to $10,000.00 in costs), the Class Representative Enhancement, payment to the Labor and Workforce Development Agency ("LWDA"), and Settlement Administrator Costs.

### B.      Calculation of Claim Amount

There are approximately 330 Class Members.

Class Members who do not submit a written request to be excluded from the Settlement shall have their Claim Amount calculated as follows:

1.  Your numerator shall be the total number of workweeks worked;
2.  The denominator shall be the aggregate amount of all numerators;
3.  Your proportionate share of the settlement shall be your numerator divided by the denominator;
4.  The Settlement Administrator will multiply the Net Settlement Amount by your proportionate share of the settlement to determine your settlement award.

The exact amount that you may receive from the settlement is currently unknown and depends on whether or not any Class Members opt out, and the number of workweeks that you worked for Grainger during the Class Period.

Based on information provided by Grainger, you will be credited for _____ workweeks, based on the following dates of employment:

                    [insert start date and end date of employment]

Payments to Class Members from the Net Settlement Fund shall be allocated as follows: one-third (33.33%) shall be allocated to unpaid wages for which the Settlement Administrator will issue IRS Forms W-2, one-third (33.33%) shall be allocated as unpaid interest for which the Settlement Administrator will issue IRS Forms 1099 INT; and one-third (33%) shall be allocated as unpaid penalties for which the Settlement Administrator will issue IRS Forms 1099 MISC.

The checks issued pursuant to this Settlement shall remain negotiable for a period of one-hundred and eighty (180) days from the date of mailing. If you fail to negotiate (i.e., cash or deposit) your, check(s) in a timely fashion, you shall remain subject to the terms of this Settlement. After the expiration of one-hundred and eighty (180) days, the sum of any un-cashed/un-deposited checks shall revert to the Net Settlement Amount and shall be distributed to the unclaimed property fund of the California State Controller's Office.

## C.    Release

Upon Final Approval by the Court of this Settlement, each Class Member who did not timely submit a completed and signed Request for Exclusion shall be deemed to have fully released and discharged Grainger, all present and former parent companies, subsidiaries, divisions, related or affiliated companies, shareholders, officers, directors, employees, agents, attorneys, insurers, successors and assigns, and any individual or entity which could be jointly liable with Grainger, or any of them ("Released Parties"), and their counsel of record, from all claims whether known or unknown, that were alleged or asserted, or that could have been alleged or asserted based upon the factual allegations set forth in the operative complaint, in the Action, from March 22, 2009, through [insert the Preliminary Approval Date] ("Released Claims").

## WHAT ARE YOUR RIGHTS AS A CLASS MEMBER?

## D.    Receive a Settlement Amount

You do not need to do anything upon receipt of this notice in order to receive a settlement amount. If you do not submit a timely and signed request for exclusion, you will automatically be included in the settlement and receive a settlement amount.

Your claim amount calculation will be based upon your dates of employment and the number of Class Members who exclude themselves from the Settlement. To dispute the dates of employment stated on your Class Notice, you must submit a written, signed dispute along with supporting documents to the Settlement Administrator at the address provided within [45 days from the date of notice]. The Settlement Administrator, in its sole discretion and after consulting with Class Counsel and Defense Counsel, will resolve the challenge and make a final and binding determination without hearing or right of appeal within ten (10) calendar days after receiving the challenge and supporting documentation.

## E.    Excluding Yourself from the Settlement

**IMPORTANT: You will be bound by the terms of the Settlement unless you submit a timely and signed written request to be excluded from the Settlement.** To exclude yourself from the Settlement you must send a signed letter setting forth your name and a statement that you request exclusion for the class and do not wish to participate in the Settlement. This is the only information you are required to send in order to be excluded from the Settlement. You must mail your request to be excluded from the Settlement, postmarked no later than [45 days from the date of notice], to:

Insert Settlement Administrator Information

## F.    Objection to Settlement

You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a larger settlement; the Court can only approve or deny the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

You may object to the proposed settlement in writing. You may also appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number (*Stovall-Gusman v. W.W. Grainger,* Case Number 3:13-cv-02540-JD), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before [45 days from the date of notice].

You are foreclosed from objecting to this Settlement if you fail to file a timely written objection. You may not submit any objections to the Settlement if you have filed a request to be excluded from the Settlement.

Class Counsel and Defense Counsel shall file any response to any objections filed by objecting Class Members at least seven (7) calendar days before the Final Approval Hearing.

You may also appear at the Final Approval Hearing, either in person or through an attorney at your own expense, provided you notify the Court of your intent to do so.

**YOU MAY OBJECT TO THE SETTLEMENT AND STILL RECEIVE YOUR SHARE OF THE NET SETTLEMENT AMOUNT. IF THE COURT APPROVES THE SETTLEMENT DESPITE OBJECTIONS, YOU WILL RECEIVE YOUR SHARE OF SETTLEMENT PROCEEDS.**

### III.  FINAL SETTLEMENT APPROVAL HEARING

The Court will hold a hearing at 450 Golden Gate Avenue, San Francisco, California, on _____, 2014, at _____, to determine whether the Settlement should be finally approved as fair, reasonable, and adequate. The hearing may be continued or rescheduled without further notice to Class Members. You should check the settlement website or the Court's PACER site (information provided below in section IV) to confirm that the date has not been changed.

You may attend the Final Approval Hearing but are not required to do so. Written objections will be considered at the Final Approval Hearing whether or not the person objecting appears at the hearing. If you object and wish to appear at the Final Settlement Hearing, you may appear personally or through counsel hired at your own expense, as long as you provide the Court with timely notice of your intent to appear. As a Class Member, your interests are being represented at no expense to you by Class Counsel, but you may hire your own lawyer at your own expense.

### IV.  ADDITIONAL INFORMATION

This notice summarizes the proposed settlement. For the precise terms and conditions of the Settlement, please see the Settlement Agreement available at [insert website], by contacting class counsel at the phone numbers provided below, by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, San Francisco division, at 450 Golden Gate Avenue, San Francisco, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

| |
|---|
| Class Counsel: <br> Sundeen Salinas & Pyle: 510-663-9240 <br> Law Offices of Thomas W. Falvey: 818-547-5200 <br><br> Settlement Administrator |

Please note that you may receive a notice similar to this one in a case entitled *Kathy Torchia v. W.W. Grainger, Inc.*, U.S.D.C. (N.D. Cal.) Case No. 1:13-cv-01427-LJO-JLT.  That notice is sent because the *Torchia* case and this action contain some of the same claims and involve some of same categories of Defendant's current and former employees.  If you receive notices in both cases, be advised that they pertain to separate settlements, and you should review both notices carefully so that you are informed about your legal rights in both cases.

## PLEASE DO <u>NOT</u> TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIMS PROCESS.

BY ORDER OF THE COURT.

# EXHIBIT B

# REQUEST FOR EXCLUSION or "OPT-OUT" FORM

**If you DO NOT want to participate in the *Maritza Stovall-Gusman v. W.W. Grainger* Settlement, please fill out and return this form.   This form is to be completed only by those Class Members who do NOT wish to participate in the Settlement and do NOT want to receive a payment for their claim, if entitled to one.**

Name: _____

First MI Last

Address: _____

Number and Street

_____

City State Zip Code

Telephone:_____

By signing this Form, I certify that I have read the notice to Class Members and I understand that:

1.   I am excluding myself from the Settlement;
2.   I will receive no financial benefit from the Settlement;
3.   I have a right to pursue claims on my own, with or without my own attorney;
4.   I understand that if I opt out, my claims may be affected by the relevant statute of limitations and that I should discuss the statute of limitations with any attorney with whom I consult.

Signature:_____Date:_____

City and State where signed:_____

## Please return the completed form by [insert date] to:

[insert settlement administrator information]

# EXHIBIT 2

June 26, 2014

Mana Barari, Esq.
Sundeen Salinas & Pyle
Matter:  Undisclosed Employment Settlement - Administration Cost Estimate



## ADMINISTRATION COST ESTIMATE SUMMARY

**KEY ASSUMPTIONS:**

1 - Estimated class size of 330 individuals
2 - Class Members are/were employed by Defendant in California
3 - The Notice Packet will include a 4-page Notice
4 - Toll-free telephone number with live operator support
5 - Settlement awards and tax forms (W-2 and 1099) will be sent together in one distribution mailing
6 - This estimate contemplates payroll reporting for a single entity in one state
7 - Settlement fund and payroll reporting will be required for one year

**CLASS SIZE:**

| | |
|---|---|
| **Total Estimated Class Size** | 330 |

**ADMINISTRATION SERVICES**

| | | |
|---|---|---|
| Notification Procedures | $ | 5,110 |
| Processing/Reporting | | 2,590 |
| Distribution | | 6,906 |
| **Total Estimated Administration Costs** | **$** | **14,605** |
| **Administration Fee Cap ("Not to Exceed" Price)** | **$** | **14,605** |

June 26, 2014

Mana Barari, Esq.
Sundeen Salinas & Pyle
Matter:  Undisclosed Employment Settlement - Administration Cost Estimate
Page 2 of 3



## NOTIFICATION PROCEDURES

| | | Unit Rate | | Volume | | Cost | | Total |
|---|---|---|---|---|---|---|---|---|
| **Case Preparation & Management** | | | | | | | | |
| Case Setup | $ | 90.00 | | 3 | hrs | $ | 270 | |
| Mailing Database Preparation | $ | 90.00 | | 5 | hrs | | 450 | |
| Software Customization | $ | 90.00 | | 3 | hrs | | 270 | |
| Document Formatting & Proofreading | $ | 90.00 | | 3 | hrs | | 270 | |
| Case Management | $ | 90.00 | | 20 | hrs | | 1,800 | |
| NCOA Update | | | | | | | 250 | |
| Subtotal Case Preparation & Management | | | | | | | | $ 3,310 |
| **Printing/Mailing** | | | | | | | | |
| Notice Packet: | | | | | | | | |
|   4-page Notice, #10 env | $ | 1.07 | | 330 | | $ | 354 | |
| Estimated 1st Class Postage | $ | 0.49 | | 330 | | | 162 | |
| Print Production Staff Hours | $ | 90.00 | | 2 | hrs | | 180 | |
| Subtotal Notice | | | | | | | | 696 |
| **Returned Undeliverable Mail ("RUM") Handling & Address Searches** | | | | | | | | |
| Estimated % and Number of RUM Notice Packets | 15% | | | 50 | | | | |
| RUM Scanning | | $ | 0.10 | 50 | | $ | 5 | |
| Address Searches | | $ | 2.00 | 50 | | | 100 | |
| Class List Contains SSNs? (Y/N) | Y | | | | | | | |
| Amount of New Addresses Found and Remail Cost | 90% | $ | 1.26 | 45 | | | 56 | |
| Estimated 1st Class Postage for Remails | | $ | 0.49 | 45 | | | 22 | |
| Staff Hours Performing RUM & Remail Services | | $ | 90.00 | 2 | hrs | | 180 | |
| Subtotal RUM Handling & Address Searches | | | | | | | | 363 |
| **Telephone Support** | | | | | | | | |
| Phone Script and FAQ development | | $ | 90.00 | 5 | hrs | $ | 450 | |
| Estimated % and # of Class Member Calls | 20% | | | 66 | | | | |
| Average minutes per call | | | | 4 | min | | | |
| Staff Hours Providing Phone Support | | $ | 70.00 | 4 | hrs | | 280 | |
| Estimated % and # of Callers Requesting Notice | 10% | | | 7 | | | | |
| Notice Request Fulfillment | | $ | 1.50 | 7 | | | 11 | |
| Subtotal Telephone Support | | | | | | | | 741 |
| **Subtotal Notification Procedures** | | | | | | | | **$ 5,110** |

June 26, 2014

Mana Barari, Esq.
Sundeen Salinas & Pyle
Matter:  Undisclosed Employment Settlement - Administration Cost Estimate
Page 3 of 3



## PROCESSING AND REPORTING

|  |  | Unit Rate | Volume |  | Cost |  | Total |
|---|---|---|---|---|---|---|---|
| **Request For Exclusion Processing** |  |  |  |  |  |  |  |
| Estimated Number of Opt-outs | 1% |  | 3 |  |  |  |  |
| Minutes per Exclusion Request | 1 |  |  |  |  |  |  |
| Staff Hours Handling Requests for Exclusion (1 hr minimum) |  | $  70.00 | 1 | hr | $  70 |  |  |
| **Reporting/Declaration** |  |  |  |  |  |  |  |
| Staff Hours for General Claimant Correspondence |  | $  90.00 | 5 | hrs | 450 |  |  |
| Staff Hours Handling Address Updates |  | $  90.00 | 5 | hrs | 450 |  |  |
| Declaration of Notice Procedures |  | $  90.00 | 8 | hrs | 720 |  |  |
| Reporting – Assumes 1x per week |  | $  90.00 | 10 | hrs | 900 |  |  |

**Subtotal Processing/Reporting**                                                                 $   2,590

## DISTRIBUTION SERVICES

|  |  | Unit Rate | Volume |  | Cost |  | Total |
|---|---|---|---|---|---|---|---|
| Settlement Fund Setup & Management (Incl. obtaining Tax ID) |  | $  90.00 | 5 | hrs | $  450 |  |  |
| Distribution Calculations |  | $  90.00 | 5 | hrs | 450 |  |  |
| Distribution Preparation |  | $  90.00 | 5 | hrs | 450 |  |  |
| Submit Claimant Info to SSA for Name/TIN Mismatch |  | $  90.00 | 3 | hrs | 270 |  |  |
| Estimated % and # of Mismatches | 5% |  | 16 |  |  |  |  |
| Print/Mail IRS Forms W-9 for Mismatches |  | $  2.00 | 16 |  | 32 |  |  |
| Process Forms W-9 Returned by Claimants |  | $  90.00 | 1 | hr | 90 |  |  |
| Issue Checks |  | $  2.00 | 327 | ea | 653 |  |  |
| Issue IRS Forms W-2 |  | $  0.75 | 327 | ea | 245 |  |  |
| Issue IRS Forms 1099-MISC |  | $  0.50 | 327 | ea | 163 |  |  |
| Issue IRS Forms 1099-INT |  | $  0.50 | 327 | ea | 163 |  |  |
| Estimated 1st Class Postage |  | $  0.49 | 327 | ea | 160 |  |  |
| Estimated % and # of Reissue Requests | 2% |  | 7 |  |  |  |  |
| Reissue Request Fulfillment |  | $  5.50 | 7 |  | 39 |  |  |
| Staff hours handling check follow-up/reissues |  | $  90.00 | 1 | hr | 90 |  |  |
| Report W-2 Information to IRS |  | $  350.00 | 1 | yr | 350 |  |  |
| Report 1099 Information to IRS |  | $  350.00 | 1 | yr | 350 |  |  |
| Settlement Fund Tax Reporting |  | $  2,500.00 | 1 | yr | 2,500 |  |  |
| Final Accounting |  | $  90.00 | 5 | hrs | 450 |  |  |

**Subtotal Distribution Services**                                                                 $   6,906