UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARITZA STOVALL-GUSMAN,<br><br>Plaintiff,<br><br>v.<br><br>W.W. GRANGER, INC.,<br><br>Defendant. | Case No. 13-cv-02540-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING MOTION FOR CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. Nos. 38, 45 |

## I. INTRODUCTION

The Court has before it two motions in this putative class action wage and hour employment dispute. First, plaintiff Maritza Stovall-Gusman ("Plaintiff") moves the Court for an order granting final approval of the parties' proposed settlement. Dkt. No. 45. Second, Plaintiff moves the Court for an award of attorneys' fees and costs. Dkt. No. 38. The Court held a final fairness hearing on both motions on April 9, 2015.

Having fully considered the parties' arguments in the moving papers and at hearing on the motion, the Court GRANTS both motions.

## II. BACKGROUND

Plaintiff was employed by defendant W. W. Grainger ("Defendant") as an Account Manager. The dispute between the parties centers on whether Defendant properly classified Account Managers as exempt employees who are not covered by state wage and hour laws under California's "outside salesperson" exemption. Declaration of Hunter Pyle ¶ 9 ("Pyle Decl."), Dkt. No. 45-2. Plaintiff claims that Account Managers are not exempt employees because they do not spend more than 50% of their time engaging in sales activities, but rather spend more time at their home offices performing administrative tasks and other work incidental to sales. *Id*. ¶ 10. Defendant, for its part, argues that Account Managers are required by company policy to spend

more than half of their time interacting with customers in the field, and that many of the administrative tasks performed by the Account Managers are directly related to their sales functions and should therefore be considered sales activities. *Id.* ¶ 11. In terms of damages, Plaintiff sought (among other things) unpaid overtime, "waiting time" penalties under California Labor Code § 203, and wage statement penalties under California Labor Code § 226(e) for Defendant's alleged failure to provide accurate itemized wage statements.

On May 6, 2014, after participating in mediation, the parties reached a settlement. *Id.* ¶ 13. On September 24, 2014, the Court held a preliminary settlement hearing and informed the parties that it would "not approve a settlement that gives an enhancement to the lead plaintiff or that sets aside 30% of the settlement amount for attorneys' fees and costs." Sept. 24, 2014 Order, Dkt. No. 35. The Court denied Plaintiff's motion for preliminary settlement approval from the bench for those reasons, and noted that if Plaintiff submitted a revised motion without these features, the Court would take that motion under submission without oral argument and issue an order. *Id.* On September 30, 2014, Plaintiff submitted a revised proposed settlement agreement and again requested the Court's approval. Sept. 30, 2014 Pyle Decl. Ex. 1 (Revised Settlement Agreement), Dkt. No. 36.

On October 30, 2014, the Court issued an order granting Plaintiff's motion for preliminary approval of the class action settlement. Oct. 30, 2014 Order, Dkt. No. 37. In that order, the Court found that the requirements of Federal Rules of Civil Procedure 23(a) and (b)(3) were met, conditionally certified the class for settlement purposes, and provisionally appointed Plaintiff's attorneys as class counsel under Federal Rule of Civil Procedure 23(g)(1). Dkt. No. 37 at 6:14-7:4. The conditionally certified class was defined as "all individuals who were employed as Account Managers in California at any time during the Class Period, and who were denied the benefits and protections required under the California Labor Code and other statutes and regulations applicable to employees in the State of California (collectively, "Account Managers")." Dkt. No. 31 at 4:9-12. The Court granted preliminary approval of the parties' settlement agreement provided the parties made certain changes to the settlement notice. Dkt. No. 37 at 5:16-26.

Having amended the settlement papers consistent with the Court's September 25, 2014 and October 30, 2014 orders, Plaintiff now seeks final settlement approval and approval of class counsel's fees and costs. For the reasons set forth below, the Court APPROVES the parties' settlement and GRANTS Plaintiff's motion for class counsel attorneys' fees and costs.

## III. DISCUSSION

### A. The Settlement Agreement

The settlement agreement defines the class as "all individuals who fall within the putative class alleged in Plaintiff's operative complaint." Pyle Decl. Ex. 1 at 2:14-15 (Settlement Agreement), Dkt. No. 45-2. For purposes of final approval, taking into account the date on which the class period began and the preliminary approval date, the class is described as "Plaintiff and all other individuals who were employed as account managers in California at any time from March 22, 2009 to October 30, 2014." Dkt. No. 45 at 16:6.

Under the agreement, Defendant agrees to pay a total of $715,000.00 (the "Gross Settlement Amount") to settle the action. This amount includes attorneys' fees and costs (not to exceed 25% of the Gross Settlement Amount and up to $10,000 in costs), a $5,000 payment to the Labor Workforce and Development Agency ("LWDA"), and Settlement Administrator costs not to exceed $20,000. Settlement Agreement ¶¶ 1(l), 10(a)-(d). Additionally, Defendant has agreed to reimburse Plaintiff for half of the costs of mediation, totaling $9,250.00. Pyle Decl. ¶ 5; Settlement Agreement ¶ 10(a). This amount is separate and apart from the Gross Settlement Amount. Accounting for attorneys' fees and costs, settlement administration costs, and the $5,000 LWDA payment, the net settlement amount to be divided among the 357 participating class members is roughly $514,136.00. Dkt. No. 45 at 11:19-23; *see also* Settlement Agreement ¶¶ 1(l), (m). This figure represents approximately 7.3% of Plaintiff's conservative estimate of what could have been awarded if the case were successfully proven at trial ($7 million). *See* Dkt. No. 37 at 4:11-24. Class members will receive a proportional share of the Net Settlement Amount based on the number of work weeks worked. Settlement Agreement ¶ 11(e).

In exchange for the settlement proceeds, class members who do not timely opt out

3

agree to fully release Defendant from all claims, whether known or unknown, that were alleged or asserted or that could have been alleged or asserted based on the factual allegations set forth in the operative complaint in this action from March 22, 2009 through October 30, 2014 (the preliminary approval date). Settlement Agreement ¶ 35. Named Plaintiff Stovall-Gusman also provides a general release to Defendant for any past, present or future claims under state and federal labor and discrimination laws pursuant to the terms of paragraph 36 of the Settlement Agreement. Settlement Agreement ¶ 36.

### B. Legal Standard for Final Settlement Approval

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982). To assess whether a proposed settlement comports with Rule 23(e), a district court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). No single factor is the "most significant." *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that class members received adequate notice.

#### 1. Adequacy of Notice

In determining whether notice was adequate the Court must ensure that the following requirements are met:
> [t]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice; the notice must indicate that a

4

> dissident can object to the settlement and to the definition of the class; each objection must be made a part of the record; those members raising substantial objections must be afforded an opportunity to be heard with the assistance of privately retained counsel if so desired, and a reasoned response by the court on the record; and objections without substance and which are frivolous require only a statement on the record of the reasons for so considering the objection.

*Officers for Justice*, 688 F.2d at 624-25 (9th Cir. 1982) (internal quotation marks and citations omitted).

The Settlement Administrator ("Gilardi") adhered to the notice procedures set forth in the preliminary settlement agreement to ensure that notice was sent to class members. *See* Declaration of Maggie McGill ("McGill Decl."), Dkt. No. 45-1; Settlement Agreement ¶¶ 16-34. Settlement notice was mailed to 361 putative class members who are current and former Account Managers employed during the class period. McGill Decl. ¶ 3, Dkt. No. 45-1. Of the 361 putative class members, 357 have chosen to participate in the settlement, and none objected. Dkt. No. 45 at 6:2-7:3. One class member could not be located. *Id.* at 6:22. Under the terms of the settlement, that member will be bound by the settlement and will receive his or her share of the settlement amount. Settlement Agreement ¶¶ 11(a), 23; Pyle Decl. ¶ 49.

Under the plan, class members were not required to submit claims to participate in the settlement. Instead, the notice was mailed to them within 30 days of preliminary approval, and class members were given the Settlement Administrator's name and contact information, provided an opportunity to be heard and to opt out or object to the settlement, and given follow-up notice regarding the settlement procedures. Overall, the Court finds that the notice procedures used here complied with the notice requirements of Rule 23(e).

### 2. Fairness, Adequacy and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

#### a. Strength of Plaintiff's Case

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). The Court is persuaded by Plaintiff's arguments at the hearing and in the moving papers that Plaintiff and the putative class would face difficulty proving the substantive elements

of their claims regarding the applicable employment classification under California law. Under the California Supreme Court's *Ramirez* decision, the application of the outside salesperson exemption is quantitative, and depends on whether an individual spends more than half of his or her actual working hours selling or obtaining contracts. *Ramirez v. Yosemite Water Co.,* 20 Cal. 4th 785, 797 (1999). In evaluating an employee's job requirements under *Ramirez*, the Court considers, among other factors, the requirements of the job from the employer's perspective. *Id.* at 802. Because Defendant here has a written policy requiring Account Managers to spend more than 50% of their time in the field interfacing with customers, the Court is persuaded that the class could have difficulty showing that class members were misclassified. Additionally, proving damages could be an uphill battle, because individual class members did not always record their time accurately and often spent work hours performing a mix of personal and work related tasks. Dkt. No. 45 at 9:18-10:15. These challenges weigh in favor of approving the settlement. *See Moore v. Verizon Commc'ns Inc.,* No. C 09-1823 SBA, 2013 WL 4610764, at *6 (N.D. Cal. Aug. 28, 2013) (finding that the relative strength of plaintiffs' case favored settlement because plaintiffs admitted they would face hurdles in establishing class certification, liability, and damages).

### b. Risks of Maintaining Class-Action Status

The Court also agrees that the putative class could face challenges in maintaining class certification throughout the litigation. Courts interpreting California law have explained that the applicability of the "outside salesperson" exemption entails an individualized analysis. *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 945 (9th Cir. 2009) (applying California law) ("[A] court evaluating the applicability of the outside salesperson exemption must conduct an individualized analysis of the way each employee actually spends his or her time, and not simply review the employer's job description."). If individualized issues "predominate," class certification cannot be maintained. *See, e.g., Williams v. Veolia Transp. Svcs. Inc.*, 379 Fed. Appx. 548, 549 (9th Cir. 2010) (affirming denial of class certification where individual inquiries pursuant to *Vinole* would have been required). Further, the individual details of class members' potentially distinct day–to–day work schedules could further challenge Plaintiff's ability to maintain class certification throughout the course of litigation.

### c. Settlement Amount and Reaction of the Class

The proposed Total Settlement Amount represents approximately 10% of what class might have been awarded had they succeeded at trial. Pyle Decl. ¶ 33. The Net Settlement amount represents about 7.3% of Plaintiff's estimated trial award. The Court recognizes that this amount is on the low end of the spectrum for class settlement awards receiving approval. Nonetheless, "[i]t is well–settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008). Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the 10% gross and 7.3% net figures are "within the range of reasonableness" in light of the risks and costs of litigation. *See Ma v. Covidien Holding, Inc.,* No. SACV 12-02161-DOC, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (finding a settlement worth 9.1% of the total value of the action "within the range of reasonableness"); *Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327 NC, 2014 U.S. Dist. LEXIS 88866, at *16 (N.D. Cal. July 21, 2014) (granting preliminary approval of a net settlement amount representing 5% of the projected maximum recovery at trial).

The class reacted favorably to this settlement. No objections were filed and only four out of approximately 631 class members opted out. The Court thus finds that this factor weighs in favor of a finding that the proposed settlement amount and distribution is fair and reasonable.

### C. Attorneys' Fees and Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Because the claims are based on California law, California law provides the basis for the award of attorneys' fees. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002). Under California law, "the award of attorney fees is proper under Section 102.5 if (1) plaintiffs' action has resulted in the enforcement of an important right affecting the public interest; (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons; and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate." *Press v. Lucky Stores*, 34 Cal. 3d 311, 317-18 (1983) (internal quotation

marks and citation omitted); Cal. Code Civ. P. § 1021.5. Based on the above criteria, the Court finds that Plaintiffs' counsel is entitled to attorneys' fees.

When applying the percentage–of–recovery method to calculate attorneys' fees, 25% of the settlement fund is the typical "benchmark" for a reasonable fee award. *Vizcaino*, 290 F.3d at 1048-50. Class counsel reduced their fee request from 30% to 25%, and the Court finds no reason to depart from that benchmark in this case.

**IV. CONCLUSION**

For the foregoing reasons it is hereby ordered that:

1. Plaintiff's Motion for Final Approval of Class Action Settlement is hereby GRANTED.

2. Plaintiff's Motion for Class Counsel's Attorneys' Fees and Costs is hereby GRANTED.

3. The Court approves the Gross Settlement Amount of $715,000.00 including payments of: attorneys' fees in the amount of $178,750.00; costs in the amount of $2,509.00; mediation costs in the amount of $9,250.00 (not to be deducted from gross settlement amount of $715,000.00); claims administration fees in the amount of $14,605.00; and a sum of $5,000 to be given to the Labor and Workforce Development Agency (LWDA).

**IT IS SO ORDERED.**

Dated: June 17, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge